UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Raymond L. Semler,

            Plaintiff,                          Court File No. 17-cv-2822 (ECT/LIB)

v.                                            **REPORT AND RECOMMENDATION**

Johnston, et al.,

            Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to a general referral made in accordance with the provisions of 28 U.S.C. § 636(b)(1), and upon Defendants' Motion to Dismiss. [Docket No. 25]. On May 6, 2019, the Court established a briefing schedule for Defendants' Motion to Dismiss. (Order [Docket No. 32]). On June 13, 2019, the Court took Defendants' Motion to Dismiss under advisement on the parties' written submissions. (Id.).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 25], be **GRANTED**.

## I. BACKGROUND AND STATEMENT OF FACTS[1]

Plaintiff Raymond Semler, (hereinafter "Plaintiff"), is civilly committed to the Minnesota Sex Offender Program ("MSOP"). (Am. Compl., [Docket No. 20], at 1). Plaintiff resides at MSOP's Moose Lake facility. (Id.). Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. He alleges that Defendants only allow Plaintiff to work 8 hours per week pursuant to the MSOP's

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to Plaintiffs. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

vocational programming with no overtime availability, and he argues this limited work opportunity violates his rights under the Fourteenth Amendment, as well as, the Tom Bane Civil Rights Act (hereinafter the "BANE Act"). (Id. at 5).

According to Plaintiff, he is currently classified as a "non-treatment participant" because he is not actively participating in MSOP's non-mandatory treatment program. (Id. at 8). Plaintiff alleges that as a non-treatment participant under MSOP's Vocational Programming policy, he is only allowed to perform a maximum of 8 hours of work per week with no overtime availability. (Id.). However, according to Plaintiff, clients who are actively participating in MSOP's non-mandatory treatment, many of whom are in Phase II of the treatment program, are allowed to perform between 20 and 24 hours of work per week. (Id.).

Because as a non-treatment participant he is only allowed to work a maximum of 8 hours per week, Plaintiff alleges that he only earns approximately $78.88 per week as compared to non-mandatory treatment participants who are in Phase II of treatment and can earn between $400 and $600 a month. (Id. at 14–15).

On October 31, 2017, Plaintiff received a Behavioral Expectation Report (BER) for attempting to possess and transfer property to another client via his mother. (Id. at 16). Before his November 8, 2017, hearing with the Behavioral Expectations Unit (BEU), Plaintiff requested a continuance of the hearing in order to request copies of the incident reports from the MSOP's legal department; his request for a continuance was denied, and the BEU held the hearing on November 8, 2017. (Id. at 17). After the conclusion of his BEU hearing, Plaintiff received a Vocational Treatment Notice from MSOP's Vocation Programming, informing him that he was required to complete an assignment with his therapist by November 22, 2017, and, if he failed to do so, he would be removed from vocational programming. (Id. at 18).

On November 9, 2017, Plaintiff appealed both the BEU's decision and Vocation Programming's requirement that he complete an assignment with his therapist. (Id. at 19). His appeal was denied on November 14, 2017. (Id. at 20).

Thereafter, on November 30, 2017, in an incident unrelated to his BER, Plaintiff's Vocational Programming supervisors informed him that it had come to their attention that he had exceeded his maximum 8 hours of work per week in a single pay period because he worked a total of 18 hours. (Id. at 21–22).[2] On May 18, 2018, Plaintiff was notified that it was discovered that he again "exceeded Non-Participant phase hours of 8 hours per week" for two pay periods. (Id. at 22). Based on this violation, Plaintiff was removed from vocational programming for a period of 30 days. (Id.).

Based on this temporary removal from vocational programming, as well as, his earlier proceedings before the Behavioral Expectation Unit and the subsequent assignment he was required to complete with his therapist, Plaintiff claims that Defendants violated his procedural due process rights under the Fourteenth Amendment. (Id. at 18–19).

Additionally, Plaintiff alleges that the MSOP's policy of giving additional work hours to its clients who are participants in its non-mandatory treatment program violates his equal protection rights, procedural due process rights, and rights under the BANE Act. (Id. at 29).

As relief, Plaintiff requests Defendants be enjoined from engaging in the same or similar practices as he alleges here, and that the Court award him monetary damages. (Id. at 30–31).

## II.   DEFENDANTS' MOTION TO DISMISS. [DOCKET NO. 25].

Defendants move the Court for an Order dismissing Plaintiff's Complaint with prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and/or

---

[2] Based on this, it appears that a pay period for MSOP clients in the vocational program spans two weeks.

3

for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss [Docket No. 25]).

### A. Standard of Review

To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of facts, which, if proven true, would entitle the plaintiff to legal redress against the named defendants under an established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). In short, "the complaint must allege facts, which if true, state a claim as a matter of law." Id. When deciding a Rule 12(b)(6) motion to dismiss, a court generally may not consider materials outside the pleadings and assumes all facts alleged in the complaint are true, construing all reasonable inferences from those facts in the light most favorable to the complainant. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008); Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly raised," nor is the court required to "read or construct an argument into a civil-rights pleading." Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004). Likewise, while pro se complaints "are to be held to less stringent standards than formal pleadings drafted by lawyers, a district court should not assume the role of advocate for the pro se

4

litigant, nor may a district court rewrite a [complaint] to include claims that were never presented." Semler v. Ludeman, No. 09–cv–0732 (ADM/SRN), 2010 WL 145275, at *5 (D. Minn. Jan. 8, 2010) (internal quotation marks and citations omitted). Furthermore, "[p]ro se litigants are not excused from complying with court orders or substantive and procedural law." Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988) (citing Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984)).

Defendants also cite Federal Rule 12(b)(1) as a basis for their Motion to Dismiss. (Defs.' Mot., [Docket No. 25], at 1). Rule 12(b)(1) states that a party may move to dismiss a claim for lack of subject matter jurisdiction. Defendants' arguments regarding the applicability of Eleventh Amendment immunity implicates the Court's subject matter jurisdiction over certain claims, and it is a challenge to the Complaint based on the face of the complaint, rather than the truthfulness of any allegations therein. "In a facial challenge to jurisdiction, such as the one before this Court, review is restricted to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." Beaulieu v. Ludeman, No. 07-cv-1535 (JMR/JSM), 2008 WL 2498241, at *5 (D. Minn. June 18, 2008).

### B. Analysis

#### 1. The BANE Act

As an initial matter, Plaintiff seeks relief under "the Bane Act," (See, Am. Compl., [Docket No. 20], at 16), presumably a reference to the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, a California state statute. But, Plaintiff is a civil detainee of the State of Minnesota seeking relief exclusively from Defendants sued in their capacities as officials of the State of Minnesota. It is therefore difficult to see what relevance the BANE Act could ever have to these proceedings.

Additionally, any claims under California law would not raise a federal question of law, (See, 28 U.S.C. § 1331), and there is no reason to believe from the Amended Complaint that the parties are of diverse citizenship, (See, 28 U.S.C. § 1332(a)), and thus, the United States District Court, District of Minnesota, lacks original jurisdiction over any of Plaintiff's claims brought pursuant to California state law.

Accordingly, Plaintiff fails to articulate any basis for relief provided by the BANE Act, and any claims brought by Plaintiff here under the BANE Act should be dismissed without prejudice. See, Olson v. Schnell, No. 19-cv-0453 (SRN/KMM), 2019 WL 3241188, at *2 (D. Minn. June 27, 2019) (holding that a civil detainee at the MSOP claims under the BANE Act should be dismissed for failure to articulate any basis for relief thereunder).

## 2. Sovereign Immunity[3]

Based on the Eleventh Amendment, Defendants argue that any federal claims for damages brought against them in their official capacities should be dismissed, as the Court lacks subject matter jurisdiction over such federal claims. (Defs.' Mem. in Supp., [Docket No. 27], at 16–17). The Court agrees.

A suit against a public employee in that person's official capacity is merely a suit against the public employer. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). "The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action." Hadley v. North Arkansas

---

[3] At the beginning of his Amended Complaint, Plaintiff states that he is only seeking monetary damages against Defendants in their individual capacities. (See, Am. Compl., [Docket No. 20], at 2). However, in the relief section of his Amended Complaint, it appears he is seeking monetary damages against Defendants in their individual and official capacities. (Id. at 30). Therefore, reading the pro se pleading liberally, the Court construes the Amended Complaint to be seeking monetary damages against Defendants in both their individual and official capacities.

6

Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997). "To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so." Faibisch v. University of Minnesota, 304 F.3d 797, 800 (8th Cir. 2002) (citing Atascadero State Hospital v. Scanlon, 473 U.S. 234, 238–40 (1985)).

Here, Plaintiff has in no way established that Minnesota has waived its immunity from damages for any of the claims at issue in this case, nor has he established that Congress abrogated Minnesota's immunity with respect to any of the federal claims at issue. See, Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997) (Section 1983 claims for damages against individual defendants in their official capacities are barred by Eleventh Amendment).

Therefore, Plaintiff will not be able to recover any monetary relief from the individually named Defendants based on any of the claims alleged against them in their official capacities. Accordingly, for lack of subject matter jurisdiction, this Court recommends dismissing with prejudice all of Plaintiff's official-capacity claims against the named Defendants which seek to recover monetary damages.

### 3. Plaintiff's Federal Constitutional Claims

Plaintiff brings procedural due process and equal protection claims under 42 U.S.C. § 1983. (Compl., [Docket No. 1], at 25–27). To state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983, "a plaintiff must [allege a] (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of Saint Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001) (citations omitted)). A plaintiff must plead facts sufficient to demonstrate that an individual defendant was directly and personally involved in an alleged constitutional violation. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.

1985); Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."). In addition to pleading individual involvement, a plaintiff must sufficiently plead a violation of a specific constitutional right. Id.

### i. Equal Protection Claim

Defendants contend that Plaintiff has failed to plead an actionable equal protection claim. (Defs.' Mem. in Supp., [Docket No. 27], at 7). The Court agrees.

In order to prevail on an equal protection claim, Plaintiff must demonstrate that persons who are similarly situated are treated differently by Defendants, and that Defendants failed to provide a rational basis for this differing treatment. See, Moreland v. United States, 968 F.2d 655, 660 (8th Cir. 1992); Beaulieu, 2008 WL 2498241 at * 12 ("Absent a threshold showing that plaintiffs are similarly situated to those who allegedly receive favorable treatment, plaintiffs do not have a viable equal protection claim."). Once it has been demonstrated that the parties are similarly situated, if the alleged action does not infringe a fundamental right or apply to a suspect classification, the court applies a rational basis review. Gavin v. Branstad, 122 F.3d 1081, 1090 (8th Cir. 1997). Under rational basis review, the action or law will meet constitutional standards if the dissimilar treatment is "rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

As to the first requirement that Plaintiff demonstrate different treatment from others who are similarly situated, the Court finds that Plaintiff has failed to do so. As Defendants have noted, "civilly committed sex offenders in different phases of a sex offender treatment program are not

similarly situated because of specific treatment needs at different levels of treatment." (Defs.' Mem. in Supp., [Docket No. 27], at 8). The Court agrees.

It is well-established in this District that a plaintiff may not be considered similarly situated to detainees at other facilities or within other units for equal protection purposes. See, Aune v. Ludeman, No. 09-cv-0015 (JNE/SRN), 2010 WL 145276, at *9 (D. Minn. Jan. 8, 2010); Beaulieu, 2008 WL 2498241, at *13 (discussing MSOP civil committees and holding that "[d]etainess at one facility or unit are not considered to be 'similarly-situated' to detainees at other facilities or units for Equal Protection purposes"); Serna v. Goodno, No 4-cv-615 (JMR/SRN), 2005 WL 1324090, at *6 (D. Minn. June 3, 2005) report and recommendation adopted, 2005 WL 1705623 (D. Minn. July 7, 2005), aff'd, 567 F.3d 944 (8th Cir. 2009); Jackson v. Wengler, No. 7-cv-3587 (JRT/FLN), 2007 WL 3275102, at *6 (D. Minn. Nov. 2, 2007) ("Generally speaking, however, inmates at one prison are not considered to be 'similarly-situated' to inmates at other prisons, for Equal Protection purposes.").

Although, to this Court's knowledge, no court has yet directly addressed the question of whether an MSOP client in a treatment program different from treatment programs involving other MSOP clients is considered to be similarly situated, this Court concludes that they are not similarly situated. According to Plaintiff, a non-participant in treatment programming, he is given fewer work hours than MSOP clients who are participating in the MSOP's treatment programs. Thus, even though he may reside in the same facility, and in some instances likely the same unit, as these other clients, by Plaintiff's own acknowledgement, the MSOP clients he compares himself to in regard to his receiving fewer work hours are in different treatment programs than Plaintiff. Thus, because Plaintiff is not in the same treatment program as the MSOP clients to which he compares himself for purposes of his equal protection claim, the Court finds that Plaintiff is not similarly

9

situated as them. See, Bringman v. Dep't of Corr., 2006 WL 1541005, at *2 (D.S.D. June 1, 2006) (finding that the plaintiff's equal protection rights were not implicated where the plaintiff failed to show that he was "being treated differently from others in his same circumstance") (emphasis added).

Accordingly, because Plaintiff has failed to show that he is similarly situated as those other MSOP clients he refers to, his equal protection claims necessarily fails. See, Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection.").[4]

As such, the Court recommends that Plaintiff's Equal Protection Claim be dismissed without prejudice.

### ii. Fourteenth Amendment Claim

Plaintiff also alleges that Defendants violated his procedural due process rights under the Fourteenth Amendment. (Compl., [Docket No. 1], at 18).

The procedural due process violations Plaintiff identifies are: (1) insufficient due process related to his being allowed fewer hours of work and his temporary suspension from the vocational training program, (Id. at 8–12, 23), and (2) insufficient due process related to his BER hearing before the BEU because his request for continuance was denied, and he was also subsequently required to complete an assignment with his therapist. (Id. at 16–21).

---

[4] Even assuming solely for the sake of argument that this Court found that Plaintiff was similarly situated as the clients who are in a different treatment program than himself, Plaintiff's claim still fails because he has failed to allege that the difference in work hours was attributable to discriminatory motives by Defendants. Liberally construing his Amended Complaint, Plaintiff only conclusory alleges that not receiving more work hours and, as a result of that, earning lower wages, is discriminatory. Plaintiff does not, however, allege that the difference in hours is attributable to discriminatory motives by Defendants. Aldaco v. Holder, No. 10-cv-590 (JRT/LIB), 2011 WL 825624, at *10 (D. Minn. Jan. 7, 2011) (finding that the plaintiff's equal protection claim necessarily fails because he did not allege facts sufficient to plausibly suggest the defendants discriminatory state of mind). Moreover, the Amended Complaint does not plausibly allege any facts from which it could be inferred that the difference in available vocational programming hours between treatment program participants and non-participants was not rationally based.

> "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant[s] deprived him of such an interest without due process of law." "Due process is a flexible concept, requiring only 'such procedural protections as the particular situation demands.'" "The fundamental requirement of due process 'is the opportunity to be heard at a meaningful time and in a meaningful manner.'"

(Citations omitted.) Schmidt v. Des Moines Public Schs., 655 F.3d 811, 817–18 (8th Cir. 2011).

We need reach the question of what process is due only if the Plaintiff establishes a constitutionally protected liberty interest; where no liberty or property interest is identified, a procedural due process claim necessarily fails. See, Bealieu, 690 F.3d at 1047 (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). If Plaintiff does have a protected liberty or property interest, the Court "then consider[s] what process is due by balancing the specific interest that was affected, the likelihood that the [MSOP] procedures would result in an erroneous deprivation, and the [MSOP's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." Senty–Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006) (citing Mathews v. Eldridge, 424 U.S. 319, 332–35 (1976)).

"Neither the Supreme Court nor [the Eighth Circuit] has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons under the Matthews balancing test." Senty–Haugen, 462 F.3d at 886. Since Plaintiff has been civilly committed to state custody, his liberty interests are considerably less than those held by members of free society. Id. However, compared to a prison inmate, Plaintiff is entitled to "more considerate treatment and conditions of confinement." Id. (quoting Youngblood v. Romeo, 457 U.S. 307, 322 (1982). Nevertheless, reference to cases involving due process claims in the prison context provide guidance in analyzing the due process claims of a civilly committed individual. In the prison context, for example, a change in the condition of confinement implicates a liberty interest only

when the action creates deprivations which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

### a. Termination of Vocational Placement

Plaintiff alleges that his procedural due process rights under the Fourteenth Amendment were violated because he received fewer hours of work than others and was temporarily suspended from the vocational training program

Plaintiff argues that he has a protected interest in additional hours of work through his vocational placement, but his argument is unavailing under well-established precedent. Plaintiff identifies no other protected interest implicated by the limitation of his vocational programming work hours or his temporary suspension from the vocational program. Case law establishes that MSOP patients have no protected interest in employment while civilly committed in the MSOP. See, Favors v. Hoover, No. 13-cv-428 (JRT/LIB), 2014 WL 4954687, *15 (D. Minn. Sept. 30, 2014); See also, Perseke v. Moser, No. 16-cv-557 (PJS/LIB), 2016 WL 6275191, at *4 (D. Minn. Sept. 26, 2016), report and recommendation adopted, No. 16-cv-557 (PJS/LIB), 2016 WL 6246761 (D. Minn. Oct. 25, 2016) (finding that MSOP patients have no protected interest in employment while civilly committed to the MSOP). Without a protected property or liberty interest, the Plaintiff's procedural due process claim must fail. See, Bealieu, 690 F.3d at 1047 (quoting Wilkinson, 545 U.S. at 221).

Therefore, the Court finds, as a matter of law, that Plaintiff could not obtain relief on this claim because he has no protected interest in employment while civilly committed in the MSOP. Therefore, the Court recommends dismissing without prejudice this procedural due process claim for failure to state a claim upon which relief could be granted.

### b. BER

Plaintiff also alleges that his procedural due process rights under the Fourteenth Amendment were violated when he was denied a continuance of his BER hearing before the BEU, and the subsequent placement of a requirement that he complete an assignment with his therapist

As previously discussed, the Court must first determine whether the plaintiff has alleged deprivation of a protected liberty or property interest. Senty–Haugen v. Goodno, 462 F.3d 876, 886 (8th Cir. 2006). Protected liberty interests are found in the Due Process Clause itself, and they may also be created by the laws of the states. Id.

In the present case, this Court concludes that this procedural due process claim should also be dismissed because Plaintiff has again failed to allege any facts from which it could be inferred that he has been deprived of any constitutionally protected liberty interest. The only deprivations Plaintiff refers to are his denial of a continuance of his BER hearing before the BEU and the subsequent added assignment he was required to complete with his therapist. He does not, however, contend that he was placed in anything like segregated confinement or punitive isolation, which was the alleged liberty interest at issue in Senty–Haugen. See, 462 F.3d at 886 (noting that the appellees conceded that placing the civilly committed plaintiff in isolation and restricting his contact with others deprived him of a liberty interest). Absent such necessary factual allegations here, the mere denial of a hearing continuance and the consequences of that hearing to which Plaintiff refers in his Amended Complaint do not suggest any dramatic departure from the ordinary incidents of his civil commitment. See, Sorenson v. Minnesota Dep't of Human Servs., No. 14-cv-4193 (ADM/LIB), 2015 WL 251720, at *16 (D. Minn. Jan. 20, 2015) (holding that the civilly committed plaintiff's procedural due process claim be dismissed where the plaintiff failed to allege that there was "any dramatic departure from the ordinary incidents of his civil commitment").

Accordingly, this Court recommends dismissing without prejudice all of Plaintiff's procedural due process claims under the Fourteenth Amendment for failure to state a claim.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion to Dismiss, [Docket No. 25], be **GRANTED**;

2. Plaintiff's federal law claims for monetary damages against Defendants in their official capacities be **DISMISSED with prejudice**;

3. Plaintiff's § 1983 claim as alleged against Defendants in their individual and official capacities based on the Equal Protection Clause be **DISMISSED without prejudice**;

4. Plaintiff's § 1983 claim as alleged against Defendants in their individual and official capacities based on the Fourteenth Amendment as it relates to Plaintiff's work hours be **DISMISSED without prejudice**; and

5. Plaintiff's § 1983 claim as alleged against Defendants in their individual and official capacities based on the Fourteenth Amendment as it relates to Plaintiff's Behavioral Expectation Report (BER) and subsequent Behavioral Expectation Unit (BEU) hearing be **DISMISSED without prejudice**.

Dated: August 1, 2019                                s/Leo I. Brisbois
                                                     The Honorable Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

# **N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).